## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON FRAZIER | : |
| | : |
| Plaintiff, | :     CIVIL ACTION NO. _____ |
| | : |
| | : |
| v. | :     JURY TRIAL DEMANDED |
| | : |
| | : |
| PENNSYLVANIA STATE UNIVERSITY | : |
| | : |
| Defendant. | : |
| | : |

## COMPLAINT

### PARTIES

1.      Aaron Frazier ("Aaron") was a student in the Pennsylvania State University Harrisburg ("Penn State" or "Penn State Harrisburg") Applied Clinical Psychology Program ("the Program").

2.      Defendant Pennsylvania State University ("Penn State") is a public university Pennsylvania State University located at 328 Boucke Building, University Park, PA 16802.  The incidents at issue in this complaint took place at Defendant's Harrisburg campus, located at 777 West Harrisburg Pike, Middletown, PA 17057.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiffs' claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section

504"), as those claims arise under the laws of the United States.  See 20 U.S.C. § 12131, et seq. and 29 U.S.C. § 794, et seq.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the jurisdiction of this Court and because Defendant's residency is Pennsylvania.

## FACTS

5.     As Defendant knew, Aaron was a student with disabilities, including major depressive disorder and generalized anxiety disorder, to include social anxiety.

6.     Aaron began at Penn State Harrisburg in the Master's in Applied Clinical Psychology program in the fall of 2017.

7.     Aaron was highly qualified for the Program at Penn State.  Aaron attended University of North Carolina at Greensboro ("UNCG") for his undergraduate education and graduated *magna cum laude*, with a grade point average ("G.P.A.") of 3.88, with a Bachelor of Arts degree in Psychology.  He completed and presented an Honors thesis at UNCG, and subsequently presented his research for the Association for Behavioral and Cognitive Therapies.

8.     Prior to taking the Practicum course at issue in this Complaint, Aaron's G.P.A. at Penn State was a 3.950.  While enrolled at Penn State, other than the Practicum course, Aaron never received lower than an A- in any course, and he earned a straight A in 70% of his classes. Even after wrongfully receiving an F in the Practicum course, Aaron's G.P.A. was a 3.650 when Penn State dismissed him from the Program.

9.     Aaron's disabilities significantly impact his ability to complete work at an efficient pace.  His anxiety and depression make him very overwhelmed.  This prevents him from engaging in his schoolwork, and results in significant avoidance behaviors.  His social

anxiety disorder causes unduly increased self-consciousness as well as self-berating cognitive distortions generated by social situations.  Fluctuations in Aaron's generalized anxiety and social anxiety symptoms have periodically impacted his concentration on work and motivation and persistence.

10.     While a student at Penn State, Aaron managed the symptoms of his disability through sessions with a life coach and psychiatrist, and psychotropic medication.  Up until the Fall of 2018, he did so successfully.

**A.     Aaron Notified Penn State of his Disabilities Repeatedly from Spring 2018 through Spring 2019.**

11.     In Spring of 2018, Aaron made Professor Carla Towsey aware of his symptoms of depression when he needed accommodations after a depressive episode following the death of his grandfather.  Professor Towsey's course, Tests and Measures, featured a complex final project unique to the course.  Aaron was unable to complete this final project due to his depression and needed extra time.

12.     He requested the reasonable accommodation of extra time.  The Program knowingly granted that accommodation.

13.     In the Fall of 2018, Aaron discussed the trouble he was having in school due to his anxiety and depression with Professor Erin Miller.

14.     On January 23, 2019, Aaron met with Disability Resources and completed a Student Assessment Form that provided his diagnoses of major depressive disorder and generalized anxiety disorder, and outlined the struggles he had been having in school.  This is when it became clear to Aaron that he needed the assistance of Disability Services.  He had previously tried to manage his disabilities and their interference with his functioning through

appropriate services and providers. This had been successful for most courses where he was not presented with unreasonable work conditions and timelines.

15. In February 2019, Aaron's psychiatrist completed a Verification Form for Psychological Disorders that Aaron submitted to Disability Resources.

16. The Verification Form for Psychological Disorders included the following recommendations: (1) A reasonable workload and expectations; (2) Realistic and achievable deadlines; (3) A delay in the existing deadlines; (4) Presence of his attorney or parents in order that any meetings about his disability accommodations and coursework be appropriately memorialized, and to provide Aaron with pertinent support and advocacy for his needs at such a meeting, so Aaron does not become "unduly overwhelmed by such a perceived situational stressor, thereby impacting his concentration or ability to understand appropriate expectations set for him by school authorities."; (5) To not be overwhelmed by a large group of people in front of whom he might be otherwise "forced" to present; and (6) A consistent, reasonable and fair schedule that allows Aaron to maintain appropriate wakefulness, while properly structuring his daytime activity, in order to allow him to achieve a sense of mastery and accomplishment from stepwise completion of tasks of incremental difficulty.

17. In addition, as discussed in detail below, when Aaron met with Dr. Brelsford and Dr. Poyrazli on February 26, 2019, and March 19, 2019, they discussed his disabilities and struggles in school in detail. Drs. Brelsford and Poyrazli evinced knowledge of his particular presentation of major depressive disorder at those meetings.

**B.      Aaron's Depressive Episode from Spring 2018-Spring 2019 and its Effects on his Education**

18. As noted above, in the Spring of 2018, Aaron experienced a depressive episode after the passing of his grandfather. As a result, the Program granted Aaron extended time to

complete assignments for his courses.  He completed his courses successfully.  But his depression continued to deepen.

19.     In order to graduate from the Program, each student was required to complete course work as well as practicum and internship courses, which were beginning-level and advanced-level courses in which students obtained clinical field experience. The practicums took place in locations outside of the college and provided students the opportunity to gain real world experience under the supervision of experienced members of the psychological field.

20.     Unfortunately, Aaron's depression continued to intensify.  He found himself sliding deeper into depression just as the Fall of 2018 began and he found himself in an impossible situation with his Practicum course.

**B.     Aaron's Second Year Practicum**

21.     Aaron returned to a regular academic schedule in the Fall 2018.  Aaron started the Fall semester at a disadvantage.  Aaron's registration was delayed due to problems with financial aid, which were persistent throughout his enrollment.  This compounded Aaron's depression and anxiety.  Aaron informed the Program that he was struggling and in bad health, and that it was impacting his registration.

22.     He was required to find his own practicum location.  Under pressure to find a practicum, Aaron inadvertently landed with a company having problems: T.W. Ponessa & Associates.  Unbeknownst to Aaron, T.W. Ponessa & Associates was experiencing significant internal turmoil that persisted throughout Aaron's time serving there.  Prior to Aaron's practicum, T.W. Ponessa had lost multiple interns.  On information and belief, Aaron was hired by T.W. Ponessa when the company had an urgent need for interns.

23.     Aaron suffered a significant exacerbation of his depression and anxiety during the semester.  In large part because of that worsening of his anxiety and depression, he was unable to meet expectations at T.W. Ponessa.  He had difficulties with engagement, paperwork completion, and responsiveness to emails.

24.     During the Fall 2018 semester, Aaron was seeing both a psychiatrist and a life coach.  Aaron's sessions during the Fall 2018 semester with both the psychiatrist and life coach increased in frequency as he tried to manage his symptoms.

25.     Practicum was a class unlike any other class that Aaron had ever taken. He could not catch up on the missing material since he missed vital information about documentation and clearances that was covered in the first weeks of class.  The syllabus and course manual did not outline the material either.

26.     Aaron was drowning in emails, due to T.W. Ponessa's habit of seemingly sending every email to everyone within the company, regardless of role or location.

27.     Aaron found the interactions with his supervisor at T.W. Ponessa, Dr. Gene Nelson, to be confusing, and later, demeaning.  This unhealthy situation aggravated Aaron's depression, putting him on the defensive.  He kept trying to dig himself out of a hole.

28.     The school was aware that Dr. Gene Nelson had a history of treating students poorly.  In fact, Dr. Winkeljohn Black described Dr. Nelson as "pretty callous."

29.     Then, a significant problem arose regarding lack of clearances for the Practicum. Prior to meeting with clients, Aaron was supposed to obtain a child abuse clearance and criminal record clearances.  There was no assistance provided to help Aaron through the clearance process.  Aaron reasonably believed the Program would direct him regarding requirements, including clearances.

30.     The question of clearances did not seem to be urgent to anyone, and it was not mentioned again until months later, when Aaron was transferred to work in a school setting, and the school administration noted the unmet requirement for background clearances.

31.     Adding to Aaron's confusion was a lack of clarity regarding roles among T.W. Ponessa personnel.  Aaron's supervisor at T.W. Ponessa, Dr. Gene Nelson, was lenient on meeting schedules, and subsequently placed Aaron under the observation of Jim Doughty, whose professional relationship with Aaron was never made expressly clear.  This further contributed to the confusion that Aaron experienced regarding the process of obtaining his clearances.

32.     Based on page 13 of the PSU-HBG 2018-2019 Practicum/Internship Handbook, Aaron's supervisor for the practicum at T.W. Ponessa (i.e., Dr. Nelson) and Aaron "shared joint responsibility in assuring that the student is familiar with all relevant agency regulations, policies, and procedures…"

33.     As the Internship Director at T.W. Ponessa and Aaron's practicum supervisor, Dr. Nelson was ultimately responsible for ensuring that anyone seeing clients at T.W. Ponessa had the proper clearances.

34.     The 2018-2019 Practicum Handbook does not say anything about requirements for treating child clients or obtaining clearances. The failure of Respondent and T.W. Ponessa to advise Aaron about requirements for treating child clients or obtaining clearances, and the mixed messages Aaron received from Dr. Nelson as to urgency of tasks, added to his confusion and anxiety.

35.     The 2018-2019 Practicum Manual explains that all requirements must be met before the Faculty Supervisor will approve registration in the practicum.  Dr. Winkeljohn Black, the professor responsible for practicum interns, did not inform Aaron that he could not see clients

until he had his clearances.  Aaron's registration was approved by the Program before he began at T.W. Ponessa, without any clearances.  In addition, in December 2018 Aaron notified Dr. Winkeljohn Black that he would be getting more hours in the Practicum in a school setting, with child clients, and the Program still made no mention of clearances to Aaron.

36.     On January 2, 2019, Aaron was informed by Dr. Nelson that he needed the clearances.  That same day, Aaron contacted Dr. Winkeljohn Black and Dr. Brelsford, the professor in charge of the Program, and told them.

37.     In addition to Aaron's lack of clearances, T.W. Ponessa experienced a 50% downturn in client intakes during the Fall 2018 semester.  When Aaron expressed concern about making his internship hours, Dr. Nelson advised him that they will work something out.

38.     Aaron was never assigned a second client.

39.     On January 2, 2019, Aaron also informed Dr. Winkeljohn Black that he did not have enough hours in the practicum to qualify for completion of the course. He expressed that he "felt paralyzed" by the situation.

40.     On January 2, 2019, Professor Winkeljohn Black advised him to speak with Dr. Nelson and find out what he needed to do to get back on track.  Dr. Brelsford was included in this response.

41.     On January 3, 2019, Dr. Brelsford agreed that Aaron should contact Dr. Nelson, and was surprised that Dr. Nelson had allowed him to see patients without the clearances.  Dr. Brelsford said if Dr. Nelson would not help him complete the practicum there, to inform her and they would have to determine how he could complete his practicum hours.

42. Dr. Brelsford then stated that Aaron had eight weeks to complete the Practicum, after which time it will become a failed grade. At that time, Aaron had a 3.93 grade point average.

43. Aaron was dismissed from the practicum by Dr. Nelson on January 7, 2019. This outcome exacerbated Aaron's anxiety and depression to the point that they became debilitating.

**B.     Defendant's Course of Discrimination Against Aaron in Spring 2019**

44. After Aaron found out he was being dismissed from the Practicum site, he requested a meeting with Dr. Brelsford and a head professor for the Program, Dr. Poyrazli, to ask for their and the Program's help.

45. On January 11, 2019, Aaron's father, David Frazier, called and emailed Professor Poyrazli from the Program and asked if he could speak with the school about how Aaron could resume his practicum. Dr. Poyrazli replied on January 12, 2019, that she could not speak with him due to the Family Educational Rights and Privacy Act ("FERPA"). The same day, Aaron emailed Dr. Poyrazli with his permission for the Program to speak with his parents about his education and disability status.

46. The Program continued to refuse to speak with Aaron's parents. As set forth in detail below, it did so to avoid the creation of any contemporaneous records of its communications with Aaron.

47. On February 26, 2019, Aaron and his father met with Dr. Brelsford and Dr. Poyrazli. At that time, Aaron had accumulated 30 direct hours and 10 indirect hours of practicum work. The Program required 100 hours, with 50 hours of direct contact with clients.

48. By the time of this meeting, Aaron had told Dr. Brelsford, Dr. Poyrazli, Professor Miller, and Disability Resources that he had generalized anxiety and depression. Penn State had

9

documentation that Aaron had these disabilities.  Defendant also knew that Aaron was requesting accommodations, including the presence of a support person and notetaker for these high-stakes meetings with Drs. Brelsford and Poyrazli.

49.     Aaron asked that his father be present in the meeting for support and to have help with notetaking.

50.     Aaron stated in the meeting that he was requesting an extension through the end of 2019 to complete his Practicum course.  Dr. Brelsford initially expressed skepticism at the idea.  She expressed the view that Aaron should have been able to muscle through his depression, and that his failure to overcome his disability made him irresponsible and therefore unfit to be a clinician.

51.     Drs. Brelsford and Poyrazli did, at least, acknowledge that what they were demanding of Aaron—completion of his practicum hours in less than half the time for a practicum—was impossible.

52.     Professor Poyrazli offered their help in advocating for internship positions with organizations.  Aaron understood this to mean that after the meeting, Professor Poyrazli and Professor Brelsford would be seeking placements for him while he also sought them for himself.

53.     Professor Brelsford agreed to review the process to provide an extension of the deferred grade.  She stated she would likely need additional documentation from Aaron and that she would need discuss his situation with the graduate school faculty.

54.     Neither Dr. Brelsford nor Dr. Poyrazli took any of those promised steps to help Aaron.

55.     Aaron met with Dr. Brelsford and Dr. Poyrazli again on March 19, 2019. Unbeknownst to Aaron at the time, the Program had determined that this was a dismissal meeting.

56.     On March 17, 2019, Dr. Brelsford emailed Aaron to set up the meeting.  Aaron promptly accepted the invitation, and advised Dr. Brelsford that his father would attend and serve as note-taker.

57.     On March 18, 2019, as David Frazier was driving into Maryland on the way to Harrisburg, Dr. Brelsford advised Aaron via email that, "Per our Graduate Dean, Dr. Peter Idowu, we are not to have additional people involved in student focused program meetings. Dr. Idowu is copied on this email if you would like to talk with him about this decision."  Defendant refused this accommodation even though it had been recommended by Aaron's psychiatrist in the Verification Form for Psychological Disorders provided to the Program in February 2019.

58.     At the time Penn State refused Aaron the presence of support person and notetaker, it knew—although Aaron did not—that this was a dismissal meeting, that Aaron was entitled to appeal from this decision, that contemporaneous notes of the meeting would be valuable in that appeal, and that Aaron was, due to his disabilities, unable to take his own notes in such a stressful setting.

59.     In the March 19, 2019 meeting, Aaron shared that he had applied to numerous practicum locations and had three interviews lined up.  Professor Poyrazli and Professor Brelsford, by contrast, had, despite their promises to the contrary, done nothing.

60.     In the meeting, Aaron discussed the challenges he had in the practicum at length with Dr. Brelsford and Dr. Poyrazli.  After she and Dr. Poyrazli finished making empty, sympathetic noises, both suggested speaking with the Registrar about a medical withdrawal for

11

the Fall 2018 semester (or perhaps just the Practicum course itself) and said that they, too, would investigate this option on Aaron's behalf.  They further indicated that they would bring up this approach with Assistant Dean Peter B. Idowu.

61.     Neither did anything of the sort.

62.     After the meeting, Aaron and his father went to the Registrar's Office.  Aaron was told that the school would not grant a retroactive medical withdrawal for a single course. Defendant's registrar suggested, however, that Aaron obtain a Retroactive Late Drop for a single course, and recommended that he submit a request for a Retroactive Late Drop of the Practicum class.

63.     On the next day, 20 March 2019, Aaron submitted the package requesting a Retroactive Late Drop of the Practicum class to the Registrar's office as suggested.

64.     On April 18, 2019, Aaron met with the Peter B. Idowu, Assistant Dean for Graduate Studies to discuss Aaron's request for a Retroactive Late Drop of the Practicum (PSYC 595A) class of Fall 2018.

65.     Dean Idowu's initial response was that a Retroactive Late Drop of one course was not only not possible, but that he did not see the justification for doing so.

66.     Aaron shared with Dean Idowu the circumstances prior to and during the Practicum class pertaining to the request.  Remarkably, Dean Idowu stated that he was unaware of any of these details.  He claimed the information had not been provided by Dr. Brelsford, Dr. Poyrazli, or Disability Resources.

67.     Dean Idowu stated that the Department was not willing to draft a memo supporting Aaron's request.

68.     Dean Idowu suggested that Aaron request a Medical Withdrawal from the entire semester, but stated that this would not defer his Practicum grade, which would still result in an F in that course.  An F in the Practicum course would result in expulsion from the Program.

69.     In essence, Dean Idowu suggested that Aaron withdraw from Fall 2018 so that Penn State could expel him anyway.

70.     Aaron submitted a Medical Withdrawal form for the Fall 2018 semester on May 14, 2019, as he was instructed to do by Dean Idowu.

71.     On May 15, 2019, Aaron was dismissed from the Program via a letter from Dr. Brelsford, citing his F in Practicum as the basis for dismissal.  The letter made no mention of the content of the three meetings Aaron had had Dr. Brelsford, Dr. Poyrazli, and Dean Idowu.  It also reflected no consideration of Aaron's request for an extension to accommodate his disabilities.

72.     On May 22, 2019, Aaron appealed the dismissal and requested, pursuant to Section 4(a) of Penn State's Policy GCAC-803, that the appeal be referred to the school's Affirmative Action Office for further consideration.

73.     On July 17, 2019, Aaron had a phone call with Bill Ritzman, the Interim ADA/504 Coordinator for Penn State University.

74.     Aaron explained the challenges he had in Practicum that were specific to his diagnoses of anxiety and depression; namely, his late start to the course, the way information was disseminated prior to starting the course; the confusing and overwhelming email practices of the company; and the conflicting expectations from Dr. Nelson.

75.     Aaron told Mr. Ritzman that he had been seeing a Life Coach since Summer 2017, and that he was seeing a psychiatrist.

76.     When asked why Aaron did not go to Disability Resources before January 2019, Aaron explained that he thought he had enough professional help outside of school to manage his courses.  He went to Disability Resources when he needed help.

77.     On August 26, 2019, Aaron had his appeals hearing of the May 2019 dismissal from the Program.  The hearing was essentially a meeting with the same parties who issued Aaron's dismissal from the Program: Dr. Brelsford, Dr. Poyrazli, and Dr. Winkeljohn Black.

78.     On August 19, 2019, Aaron requested that his father be permitted to accompany him to the hearing and take notes, consistent with accommodations recommended by Aaron's psychiatrist in the Verification Form for Psychological Disorders provided to the Program in February 2019.

79.     On August 22, 2019, Dr. Brelsford informed Aaron that along with Penn State's General Counsel and Dr. Idowu, the Program had determined they would not allow Aaron's father to attend nor would they permit someone to accompany Aaron as a notetaker.

80.     Dr. Brelsford wrote that the Program would record the meeting with Aaron's permission for future reference and that they would also be taking notes, which they could provide following the meeting.

81.     On August 23, 2019, Aaron emailed Disability Resources and requested to be accompanied by a notetaker for the appeals hearing, consistent with accommodations recommended by Aaron's psychiatrist in the Verification Form for Psychological Disorders provided to the Program in February 2019.  Aaron also requested his father's presence for emotional support.  Both requests were again denied by the Program.

82.     Brelsford and Poyrazli would subsequently renege on the promised sharing of recordings.  They eventually provided what appear to be excerpts of their notes, which include numerous misstatements, mischaracterizations, and significant omissions.

83.     Aaron was distraught after the meeting.

84.     Defendant compounded his distress when, after the hearing had passed, Mr. Ritzman emailed on behalf of Defendant's Office of Disabilities Services to say that Aaron's request to record the hearing as an accommodation for his disabilities was denied because he would be given the recording promised—and subsequently refused—by Drs. Brelsford and Poyrazli.

85.     On September 2, 2019, Aaron filed a final appeal with Dr. Regina Vasilatos-Younken, Vice Provost for Graduate Education and Dean of the Graduate School.

86.     On September 23, 2019, the Program denied Aaron's final appeal.  The letter indicated that Penn State's Affirmative Action Office had found no evidence of discrimination.

87.     On information and belief, Dr. Brelsford has taken steps to blackball Aaron because of her belief that a clinician who cannot "muscle through" his depression is irresponsible and therefore unfit to work in psychology.

88.     Since his dismissal from the Program, Aaron has applied to several Ph.D. programs in Clinical Psychology; however, he has found that professors who previously had high regard for his academic achievements were unwilling to serve as references for his applications.

89.     For example, Aaron requested references of two of his PSU Harrisburg professors with whom he had good working relationships and in whose classes he was successful.  To date, neither professor has responded to Aaron's request for a reference.  On information and belief,

they have refused to do so because Defendant has directed them not to respond.

90.     Plaintiff brings this civil action under the laws of the United States and the Commonwealth of Pennsylvania to remedy Defendant Pennsylvania State University's violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

## CLAIMS

## COUNT I – DISCRIMINATION PURSUANT TO TITLE II OF THE ADA

91.     Paragraphs 1 through 90 are incorporated by reference as though set forth fully herein.

92.     Pennsylvania State University is recipient of federal financial assistance and a public entity.

93.     Aaron is a student with a disability.  Aaron has major depressive disorder and generalized anxiety disorder, to include social anxiety.

94.     Aaron is highly qualified to participate in and complete Defendant's Master's Program in Applied Clinical Psychology.  Aaron attended University of North Carolina at Greensboro for his undergraduate education and graduated *magna cum laude*, with a grade point average ("G.P.A.") of 3.88, with a Bachelor of Arts degree in Psychology.  He completed and presented an Honors thesis at UNCG, and subsequently presented his research for the Association for Behavioral and Cognitive Therapies.  Prior to taking the Practicum course at issue in this Complaint, Aaron's G.P.A. at Penn State was a 3.950.  While enrolled at Penn State, other than the Practicum course, Aaron never received lower than an A- in any course, and he earned a straight A in 70% of his classes.  Even after wrongfully receiving an F in the Practicum course, Aaron's G.P.A. was a 3.650 when Penn State dismissed him from the Program.

95.     With reasonable accommodations, Aaron is fully capable of meeting the academic standards of the Program.  Such accommodations would not fundamentally alter the nature of the Program.

96.     Aaron was excluded from participation in and denied the benefits of the services, programs, and activities of the Program because

   a.   The Program refused to consider an extension of the Practicum deadlines, despite its admission that the deadline was unreasonable and infeasible for *any* student, let alone Aaron while he was experiencing symptoms of his disabilities;

   b.   The Program refused to assist Aaron in resolving his problems with the Practicum or finding a new practicum location, even after hearing how much Aaron was struggling and after Aaron requested accommodations that specifically addressed deadlines and workloads;

   c.   Knowing that Aaron's disabilities made it very difficult for him to focus and function well at the time, refused to permit a leave of absence;

   d.   The Program repeatedly denied Aaron access to a notetaker in more than one meeting regarding status as a student and completion of the Practicum, despite Aaron's request and supporting documentation with Disability Resources, including the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019; and

   e.   The Program refused to provide recordings of meetings, and did not provide objective or accurate notes for meetings, after denying Aaron's request for a notetaker in accordance with the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019.

97.     Defendant and its agents subjected Aaron to discrimination because of his disabilities by

   a.   Refusing to consider an extension of the Practicum deadlines, despite its admission that the deadline was unreasonable and infeasible for *any* student, let alone Aaron while he was experiencing symptoms of his disabilities;

   b.   Refusing to assist Aaron in resolving his problems with the Practicum or finding a new practicum location, even after hearing how much Aaron was struggling and after Aaron requested accommodations that specifically addressed deadlines and workloads;

c.      Knowing that Aaron's disabilities made it very difficult for him to focus and function well at the time, refusing to permit a leave of absence;

d.      Repeatedly denying Aaron access to a notetaker in more than one meeting regarding status as a student and completion of the Practicum, despite Aaron's request and supporting documentation with Disability Resources, including the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019;

e.      Refusing to provide recordings of meetings, and did not provide objective or accurate notes for meetings, after denying Aaron's request for a notetaker in accordance with the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019;

f.      Giving Aaron the run-around on his requested forms of relief (withdrawals and retroactive drops) and misleading Disability Resources with respect to the Program's efforts to accommodate Aaron because they were unhappy that Aaron had asserted his rights as a person with disabilities; and

g.      On information and belief, continuing to adversely impact Aaron's future career prospects, even after Aaron was dismissed the Program.

WHEREFORE, Plaintiff requests the following relief:

(a)      Judgment for the Plaintiff and against Defendant;

(b)      Injunctive relief in the form of reversing Defendant's dismissal of Aaron and granting him a withdrawal from the Practicum course;

(c)      Reimburse Aaron for the cost of the Program;

(d)      An award of attorney's fees and costs; and

(e)      Such other relief as the Court deems equitable and just.

## COUNT II – DISCRIMINATION PURSUANT TO 29 U.S.C. § 794

98.      Paragraphs 1 through 97 are incorporated by reference as though set forth fully herein.

99.      Pennsylvania State University is recipient of federal financial assistance and a public entity.

100.      Aaron is a student with a disability.  Aaron has major depressive disorder and

18

generalized anxiety disorder, to include social anxiety.

101.    Aaron is highly qualified to participate in and complete Defendant's Master's Program in Applied Clinical Psychology.  Aaron attended University of North Carolina at Greensboro for his undergraduate education and graduated *magna cum laude*, with a grade point average ("G.P.A.") of 3.88, with a Bachelor of Arts degree in Psychology.  He completed and presented an Honors thesis at UNCG, and subsequently presented his research for the Association for Behavioral and Cognitive Therapies.  Prior to taking the Practicum course at issue in this Complaint, Aaron's G.P.A. at Penn State was a 3.950.  While enrolled at Penn State, other than the Practicum course, Aaron never received lower than an A- in any course, and he earned a straight A in 70% of his classes.  Even after wrongfully receiving an F in the Practicum course, Aaron's G.P.A. was a 3.650 when Penn State dismissed him from the Program.

102.    With reasonable accommodations, Aaron is fully capable of meeting the academic standards of the Program.  Such accommodations would not fundamentally alter the nature of the Program.

103.    Aaron was excluded from participation in and denied the benefits of the services, programs, and activities of the Program because

a.    The Program refused to consider an extension of the Practicum deadlines, despite its admission that the deadline was unreasonable and infeasible for *any* student, let alone Aaron while he was experiencing symptoms of his disabilities;

b.    The Program refused to assist Aaron in resolving his problems with the Practicum or finding a new practicum location, even after hearing how much Aaron was struggling and after Aaron requested accommodations that specifically addressed deadlines and workloads;

c.    Knowing that Aaron's disabilities made it very difficult for him to focus and function well at the time, refused to permit a leave of absence;

d.    The Program repeatedly denied Aaron access to a notetaker in more than one meeting regarding status as a student and completion of the Practicum, despite

Aaron's request and supporting documentation with Disability Resources, including the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019; and

e.  The Program refused to provide recordings of meetings, and did not provide objective or accurate notes for meetings, after denying Aaron's request for a notetaker in accordance with the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019.

104.  Defendant and its agents subjected Aaron to discrimination because of his

disabilities by

a.  Refusing to consider an extension of the Practicum deadlines, despite its admission that the deadline was unreasonable and infeasible for *any* student, let alone Aaron while he was experiencing symptoms of his disabilities;

b.  Refusing to assist Aaron in resolving his problems with the Practicum or finding a new practicum location, even after hearing how much Aaron was struggling and after Aaron requested accommodations that specifically addressed deadlines and workloads;

c.  Knowing that Aaron's disabilities made it very difficult for him to focus and function well at the time, refusing to permit a leave of absence;

d.  Repeatedly denying Aaron access to a notetaker in more than one meeting regarding status as a student and completion of the Practicum, despite Aaron's request and supporting documentation with Disability Resources, including the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019;

e.  Refusing to provide recordings of meetings, and did not provide objective or accurate notes for meetings, after denying Aaron's request for a notetaker in accordance with the Verification Form for Psychological Disorders Aaron provided to the Program in February 2019;

f.  Giving Aaron the run-around on his requested forms of relief (withdrawals and retroactive drops) and misleading Disability Resources with respect to the Program's efforts to accommodate Aaron because they were unhappy that Aaron had asserted his rights as a person with disabilities; and

g.  On information and belief, continuing to adversely impact Aaron's future career prospects, even after Aaron was dismissed the Program.

WHEREFORE, Plaintiff requests the following relief:

(a)     Judgment for the Plaintiff and against Defendant;

(b)     Compensatory damages to Plaintiff against Defendant;

(c)     An award of attorney's fees and costs; and

(d)     Such other relief as the Court deems equitable and just.


Dated: 25 February 2021                    Respectfully submitted,


                                           Michael D. Raffaele (PA ID 91615)
                                           Gillian M. Dagress (PA ID 313370)
                                           Raffaele & Associates, LLC
                                           1230 County Line Road
                                           Bryn Mawr, PA 19010
                                           T: (610) 922-4200 / F: (610) 646-0888
                                           Michael@MyKidsLawyer.com
                                           Gillian@MyKidsLawyer.com

                                           *Counsel for Plaintiff*