## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON FRAZIER, | No. 4:21-CV-00350 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY, | |
| Defendant. | |

## MEMORANDUM OPINION

### MAY 18, 2022

## I.    BACKGROUND

On September 13, 2021, Aaron Frazier filed a Second Amended Complaint against The Pennsylvania State University ("Penn State").  Frazier sued under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Fair Educational Opportunities Act ("PFEOA").

On September 27, 2021, Penn State filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is now ripe for disposition; for the following reasons, it is denied in part and granted in part.  Further leave to amend is not granted.  Penn State is ordered to file an Answer.

## II.   DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]   *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3]   *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]   *Id.* at 327.

[5]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662 (2009).

[8]   *Id.* at 670.

[9]   *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept

---

[10] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11] *Id.*
[12] *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13] *Twombly*, 550 U.S. at 556.
[14] *Iqbal*, 556 U.S. at 679.
[15] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).
[16] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

## B.    Facts Alleged in the Second Amended Complaint

The facts alleged in the Second Amended Complaint, which I must accept as true for the purposes of this motion, are as follows.

In the fall of 2017, Aaron Frazier began at Penn State Harrisburg's Master's in Applied Clinical Psychology Program.[20]  Frazier suffered from major depressive disorder and generalized anxiety disorder, including social anxiety.[21]   These

---

[17]  *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[18]  *Id.  See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[19]  *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).

[20]  Doc. 18 at ¶ 7.

[21]  *Id.* at ¶ 6.

conditions prevented Frazier from engaging in schoolwork by affecting his concentration, motivation, and persistence.[22]

After his grandfather died, Frazier requested extra time to complete a final project in the spring of 2018.[23] And the Program accommodated this request.[24] Still, Frazier continued to struggle with depression and anxiety, discussing these struggles with Professor Erin Miller.[25]

That semester, Frazier enrolled in the Clinical Practicum course, which the Program required to graduate.[26] A Practicum site, T.W. Ponessa & Associates, hired Frazier as an intern.[27] There, Dr. Gene Nelson supervised Frazier.[28]

For the Practicum, Frazier needed child-abuse and criminal-record clearances.[29] But the Program did not notify Frazier about these clearance requirements.[30] When Nelson informed Frazier that he needed clearances on January 2, 2019, Frazier in turn informed Drs. Winkeljohn Black and Brelsford.[31]

The same day, Winkeljohn Black advised Frazier to speak with Nelson and find out what he needed to get back on track.[32] The next day, Brelsford agreed that

---

[22] *Id.* at ¶ 10.
[23] *Id.* at ¶¶ 12–13.
[24] *Id.* at ¶ 13.
[25] *Id.* at ¶ 14.
[26] *Id.* at ¶¶ 20–24.
[27] *Id.* at ¶ 24.
[28] *Id.* at ¶ 28.
[29] *Id.* at ¶ 30.
[30] *Id.* at ¶¶ 31, 35–36.
[31] *Id.* at ¶ 37.
[32] *Id.* at ¶ 41.

Frazier should contact Nelson and inform her if Nelson did not help him complete his Practicum at T.W. Ponessa.[33]  That way, Brelsford would determine how Frazier could complete his Practicum hours at another site.[34]  Brelsford also stated that Frazier had eight weeks to complete the Practicum, after which Frazier would receive a failing grade.[35]

Frazier did not complete the Practicum hours because he lacked clearances and T.W. Ponessa's client intakes decreased.[36]  So Nelson dismissed Frazier from T.W. Ponessa on January 7, 2019.[37]  And Frazier received a deferred grade in Practicum, which was customary for students who needed more than one semester to complete Practicum hours.[38]

On January 11, 2019, Frazier's father called and emailed Dr. Poyrazli, a head professor for the Program, about Frazier's resuming the Practicum.[39]  But Poyrazli responded that she could not speak with Frazier's father under the Family Educational Rights and Privacy Act.[40]  So Frazier emailed Poyrazli with permission to speak to his parents.[41]

---

[33]  *Id.* at ¶ 42.
[34]  *Id.*
[35]  *Id.* at ¶ 43.
[36]  *Id.* at ¶ 38.
[37]  *Id.* at ¶ 44.
[38]  *Id.* at ¶ 45.
[39]  *Id.* at ¶ 47.
[40]  *Id.*
[41]  *Id.*

On January 23, 3019, Frazier met with Disability Resources and completed an assessment form outlining his struggles with depression and anxiety.[42]  And in February 2019, Frazier's psychiatrist completed a form verifying Frazier's mental illnesses and recommending various accommodations.[43]  Frazier submitted this form to Disability Resources.[44]

On February 26, 2019, Frazier and his father met with Brelsford and Poyrazli to discuss Practicum.[45]  When Frazier requested an extension through the end of 2019, Brelsford initially expressed skepticism.[46]  But Poyrazli offered to help find Frazier a Practicum position.[47]  Brelsford also agreed to review the extension process, stating that she would likely need additional documentation from Frazier and would need to discuss Frazier's situation with the graduate-school faculty.[48]

On March 19, 2019, Brelsford and Poyrazli met with Frazier again.[49]  Though Frazier's psychiatrist had recommended his parents' presence in such meetings, Penn State refused that accommodation for this meeting.[50]  During this dismissal meeting, Brelsford and Poyrazli suggested speaking with the Registrar about a

---

[42]   *Id.* at ¶ 15.
[43]   *Id.* at ¶¶ 16–17.
[44]   *Id.* at ¶ 16.
[45]   *Id.* at ¶ 51.
[46]   *Id.* at ¶ 54.
[47]   *Id.* at ¶ 56.
[48]   *Id.* at ¶ 57.
[49]   *Id.* at ¶ 59.
[50]   *Id.* at ¶¶ 62–63.

medical withdrawal for the Fall 2018 semester or perhaps just for the Practicum course itself.[51]

But when Frazier and his father asked, the Registrar indicated that this was not an option.[52]  Instead, the Registrar recommended requesting a retroactive late drop of the Practicum course.[53]  So Frazier requested this retroactive late drop the next day, March 20, 2019.[54]

On April 18, 2019, Frazier met with Assistant Dean Peter B. Idowu to discuss the retroactive late drop.[55]  Idowu did not see the justification for this retroactive late drop and refused to draft a memo supporting Frazier's request.[56]  Instead, Idowu suggested seeking a medical withdrawal for the entire Fall 2018 semester, which would result in a failing grade in the Practicum and expulsion from the Program.[57]

As Idowu instructed, Frazier requested a medical withdrawal for the Fall 2018 semester on May 14, 2019.[58]  The next day, Brelsford dismissed Frazier from the program via a letter.[59]  Frazier appealed this dismissal twice.[60]  On September 23, 2019, Penn State denied Frazier's final appeal.[61]

---

[51]  *Id.* at ¶ 65.
[52]  *Id.* at ¶ 67.
[53]  *Id.*
[54]  *Id.* at ¶ 68.
[55]  *Id.* at ¶ 69.
[56]  *Id.* at ¶¶ 70, 72.
[57]  *Id.* at ¶ 73.
[58]  *Id.* at ¶ 75.
[59]  *Id.* at ¶ 76.
[60]  *Id.* at ¶¶ 77, 90.
[61]  *Id.* at ¶ 91.

In March 2020, Frazier filed a complaint with the Pennsylvania Human Relations Commission ("PHRC").[62]  On or about June 10, 2021, Frazier received a right-to-sue letter from the PHRC.[63]  Frazier had filed suit in this Court on February 25, 2021.[64]

### C.    Analysis

#### 1.    Abandonment

As a threshold matter, Penn State argues that Frazier has abandoned his RA claim by failing to mention it in his response brief.  But Frazier's response brief contends that he "sufficiently plead [sic]" and filed his RA claim "within the relevant statutes of limitation."[65]  Frazier's brief also explains the statute of limitations for his RA claim.[66]  Accordingly, Frazier has not abandoned his RA claim.

#### 2.    Timeliness

##### a.    ADA/RHA

First, Penn State argues that Frazier's ADA and RA claims are untimely. "Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings."[67]  "In evaluating the statute of limitations

---

[62]  *Id.* at ¶ 95.
[63]  *Id.* at ¶ 96.
[64]  Doc. 1.
[65]  Doc. 22 at 13.
[66]  *Id.* at 17.
[67]  *Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009).

on a motion to dismiss, a court is limited to the allegations of the complaint, the exhibits attached to the complaint, and matters of public record."[68]

"Because neither the ADA nor the Rehabilitation Act contains an express limitation period, their statute of limitations is determined by looking to the limitations period for the most analogous cause of action in the state in which it sits."[69] "For [Frazier's] claims under the ADA and the Rehabilitation Act, this is Pennsylvania's two-year limitations period for personal injury actions."[70] Accordingly, "[t]he statute of limitations for [Frazier's] ADA and Rehabilitation Act claims is two years."[71]

Because Frazier first sued on February 25, 2021, Frazier's "ADA and Rehabilitation Act claims will be time-barred if they accrued before" February 25, 2019.[72] "A cause of action accrues and the statute of limitations begins to run . . . when the plaintiff knows or has reason to know of the injury that is the basis for the action."[73] "In a discrimination case, the focus is on when the discriminatory act occurs, not when the consequences of that act become painful."[74] That is, Frazier's

---

[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.* at 483.
[73] *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003).
[74] *Id.*

claims accrued when Penn State "establishe[d] its official position and communicate[d] that position by giving notice to" Frazier.[75]

Penn State argues that Frazier's claims accrued on January 7, 2019, when Dr. Gene Nelson dismissed him from T.W. Ponessa. But Penn State did not employ Nelson.[76] So it is not apparent from the face of the pleadings that Penn State "establish[ed] its official position and communicate[ed] that position" through Nelson, a third party.[77]

Penn State also analogizes this case to two others. *Chardon v. Fernandez* held that plaintiffs' cause of action accrued when "respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments."[78] Similarly, *Frank v. University of Toledo* held "that the date of initial notification of denial of accommodations was the date of accrual."[79] *Chardon* and *Frank* therefore tied accrual to notification of termination and denial of accommodations.

Here, Frazier alleges that in January 2019, Dr. Brelsford gave him eight weeks to complete the Practicum, for which he received a deferred grade.[80] Frazier also alleges that Penn State denied him various accommodations on or after February 26,

---

[75] *Bailey v. United Airlines*, 279 F.3d 194, 199 (3d Cir. 2002).
[76] Doc. 21 at 10 ("In Fall 2018, Frazier was a participant in the required Practicum at a third-party's site supervised by Dr. Nelson, an employee of that third party.").
[77] *Bailey*, 279 F.3d at 199.
[78] 454 U.S. 6, 8 (1981).
[79] 621 F. Supp. 2d 475, 483 (N.D. Ohio 2007).
[80] Doc. 18 at ¶¶ 43, 45.

2019.[81]  These allegations permit the inference that Penn State notified Frazier of its official decisions to dismiss him and deny him accommodations after February 25, 2019.  Accordingly, the Court "cannot conclude at this stage" that Frazier's ADA and RA claims "are barred by the statute of limitations."[82]

### b.    PHRA/PFEOA

Next, Penn State argues that Frazier's PHRA and PFEOA claims are untimely. "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination."[83] The PFEOA also "requires a plaintiff to bring a complaint with the PHRC within 180 days of the unfair educational practice at issue."[84]  "The Pennsylvania courts have strictly interpreted this requirement," precluding judicial remedies for plaintiffs who "fail[] to file a timely complaint with the PHRC."[85]

Here, Frazier filed a complaint with the PHRC in March 2020.[86]  Within 180 days of that filing, Frazier alleges only one act: Penn State's denying his final appeal on September 23, 2019.[87]  But this denial of Frazier's final appeal does not render his PHRA and PFEOA claims timely.

---

[81]  *Id.* at 51–97.
[82]  *Taylor v. Henderson*, 632 F. App'x 70, 74 (3d Cir. 2015).
[83]  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 P.S. §§ 959(h), 962(c)).
[84]  *Datto*, 664 F. Supp. 2d at 497.
[85]  *Woodson*, 109 F.3d at 925.
[86]  Doc. 18 at ¶ 95.
[87]  *Id.* at ¶ 91.

Two cases explain why.  In *Delaware State College v. Ricks*, the eponymous college denied Columbus Ricks tenure.[88]  So Ricks appealed this decision through an internal grievance committee.[89]  Eventually, the Board of Trustees denied Ricks's internal appeal.[90]

The Supreme Court of the United States held that Ricks's internal "grievance, or some other method of collateral review of an employment decision, [did] not toll the running of the limitations periods."[91]  Instead, "the filing limitations period . . . commenced[] at the time the tenure decision was made and communicated to Ricks."[92]  Thus, the Supreme Court remanded to the Third Circuit "so that it may reinstate the District Court's order dismissing the complaint" as untimely.[93]

Though *Ricks* "dealt with Federal equal opportunity law," Pennsylvania courts have found it "convincing" for state-law claims too.[94]  For example, in *Garlick v. Lock Haven University*, the Commonwealth Court of Pennsylvania held that "similarly to *Ricks* . . ., we believe the alleged act of discrimination was Lock Haven's decision not to renew Garlick's contract, not its termination of his employment when his contract expired."[95]  "Therefore, the trial court did not err in

---

[88]  449 U.S. 250, 252 (1980).
[89]  *Id.*
[90]  *Id.* at 254.
[91]  *Id.* at 261.
[92]  *Id.* at 258.
[93]  *Id.* at 262.
[94]  *Garlick v. Lock Haven Univ.*, No. 540 C.D. 2008, 2008 WL 9405237, at *2 (Pa. Commw. Ct. Dec. 9, 2008).
[95]  *Id.*

determining that Garlick failed to file his complaint with the PHRC within the required time period."[96]

As in *Ricks* and *Garlick*, the allegedly discriminatory acts here are Penn State's decisions to deny Frazier accommodations and dismiss him from the Program. So the 180-day filing period commenced when Penn State communicated these decisions to Frazier, not when Penn State denied Frazier's final appeal. Accordingly, Frazier's failure to file a PHRC complaint within 180 days is apparent from the face of the pleadings.[97]

Frazier counters that the "PHRC determined that the Complaint was timely filed with respect to the September 23, 2019 dismissal."[98] But as I explained before, "a court is limited to the allegations of the complaint, the exhibits attached to the complaint, and matters of public record" "[i]n evaluating the statute of limitations on a motion to dismiss."[99] And Frazier's Second Amended Complaint does not allege that the PHRC determined that Frazier had timely complained.[100] Nor does Frazier attach this determination to his Second Amended Complaint.[101] Nor does

---

[96] *Id.*

[97] *See Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017) ("Because the tardiness of Clarkson's initial EEOC/PHRC complaint is apparent from the face of the complaint and we decline to toll the statutes of limitation, we will affirm the District Court's Rule 12(b)(6) dismissal of Clarkson's failure to promote claims."); *see also Capriotti v. Chivukula*, No. CIV.A.04-2754, 2005 WL 83253, at *2 (E.D. Pa. Jan. 14, 2005) ("Capriotti's PHRA claims against Chivukula are therefore untimely. . . . Chivukula's Motion to Dismiss is granted.").

[98] Doc. 22. at 20.

[99] *Datto*, 664 F. Supp. 2d at 482.

[100] Doc. 18.

[101] *Id.*

Frazier cite any caselaw indicating that the PHRC's timeliness analysis affects mine.[102]  So Frazier's argument regarding the PHRC's determination does not save his PHRA and PFEOA claims from dismissal.

Frazier also counters that "the PHRA and PFEOA claims arose from a single chain of events, amounting to continuing violations, which culminated in the final dismissal."[103]  But Penn State's denials of accommodations do "not fit under the continuing violations theory."[104]  And Frazier's dismissal from the Program "is a discrete act, not a continuation of any earlier failures to accommodate."[105]  Because the continuing-violation doctrine does not apply either, PHRA and PFEOA claims are dismissed.

### 3.    Merits

That leaves Frazier's ADA and RA claims.  "Plaintiffs who allege violations under the ADA . . . and the Rehabilitation Act may proceed under any or all of three

---

[102]  Docs. 18, 22.

[103]  Doc. 22 at 20.

[104]  *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015); *see also Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 762 (3d Cir. 2012) ("We agree with the District Court, as Muhammad's allegations make clear that he was aware at the time that each of his requests for an accommodation was denied—beginning as early as 2004—that the absence of accommodations would adversely affect his ability to represent himself. The District Court correctly . . . concluded that the continuing violations doctrine did not apply because Muhammad should have been aware of each act's negative impact at the time it occurred.").

[105]  *Zankel v. Temple Univ.*, 245 F. App'x 196, 199 (3d Cir. 2007) (affirming dismissal with prejudice); *see also Krooks v. Haverford Coll.*, No. CIV.A. 14-4205, 2015 WL 221082, at *5 (E.D. Pa. Jan. 14, 2015) ("The fact that Plaintiff continued to be distressed and suffer the consequences of the decisions throughout her tenure at Haverford is not alone sufficient to prolong the life of this cause of action. The Court's focus must be on any alleged continuing violation, not on the allegedly continuing impact on Plaintiff. There was no continuing violation after the Spring 2012 decisions, only continuing impact.").

theories: disparate treatment, disparate impact, and failure to make reasonable accommodation."[106]  I address each theory in turn.

### a.   Disparate Treatment

To show disparate treatment, Frazier "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."[107] For the first prong, Frazier alleges good grades and various academic accomplishments.[108]  These allegations permit the inference that Frazier was qualified.

For the second prong, Frazier alleges that his anxiety and depression overwhelm him, prevent him from engaging in schoolwork, increase his self-consciousness, and cause self-berating cognitive distortions.[109]  Frazier's conditions also affect his concentration, motivation, and persistence.[110]  Again, these allegations permit the inference that Frazier has disabilities.

For the third prong, Frazier alleges that Penn State dismissed him from its Master's Program in Applied Clinical Psychology in May 2019.[111]  This permits an

---

[106] *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).
[107] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007).
[108] Doc. 18 at ¶ 101.
[109] *Id.* at ¶ 10.
[110] *Id.*
[111] *Id.* at ¶ 76.

inference that Penn State, a public entity, excluded Frazier or denied him the benefits of the Master's Program in Applied Clinical Psychology.

For the fourth prong, Frazier alleges that the professor in charge of the Program, Dr. Brelsford,[112] indicated that he should have been able to "muscle through" his depression.[113]    Frazier also alleges that Brelsford expressed that Frazier's failure to overcome his disabilities "made him irresponsible and therefore unfit to be a clinician."[114]  Dr. Brelsford's alleged statements permit the inference that she discriminated against Frazier because of his disabilities.   Accordingly, Frazier has plausibly alleged all four prongs of disparate treatment.

Penn State counters that it dismissed Frazier before it learned of his disabilities.  But the Second Amended Complaint repeatedly alleges that Penn State dismissed Frazier *after* he gave notice of his disabilities and requested accommodations.[115] At this stage, I must accept Frazier's allegations as true.[116]  So I cannot dismiss Frazier's claims by relying on Penn State's timeline of events instead.

Penn State also counters that Frazier has not alleged that similarly-situated students without disabilities were permitted to stay in the Program after they failed the Practicum.  The Third Circuit has "assume[d], without deciding, that identifying

---

[112] *Id.* at ¶ 37.
[113] *Id.* at ¶ 54.
[114] *Id.*
[115] Doc. 18 at ¶¶ 12–17, 19, 37, 40–45, 49–50.
[116] *Phillips*, 515 F.3d at 228.

these non-disabled individuals as similarly situated . . . is sufficient to satisfy the fourth prong of [plaintiffs'] prima facie ADA case."[117]  But the Third Circuit has not held that identifying such similarly-situated individuals is *necessary* to allege the fourth prong, causation.  So Frazier's failure to identify similarly-situated students whom Penn State permitted to stay in the Program does not vitiate his ADA and RA disparate-treatment claims at this stage.

### b.    Disparate Impact

Penn State also argues that Frazier has not alleged any facts supporting a conclusion that the Practicum has a "disparate impact" on people with disabilities. Indeed, Frazier's Second Amended Complaint does not allege disparate-impact liability.[118]  Nor does Frazier respond to Penn State's disparate-impact arguments in his response brief.[119]  If Frazier raised disparate-impact claims under the ADA or RA, these claims are dismissed.[120]

---

[117] *Fowler v. AT&T, Inc.*, 19 F.4th 292, 301 (3d Cir. 2021).

[118] Doc. 18.

[119] Doc. 22.

[120] *See Lehenky v. Toshiba Am. Energy Sys. Corp.*, No. 20-4573, 2022 WL 523739, at *5 (E.D. Pa. Feb. 22, 2022) ("In fact, her Complaint is completely devoid of any facts to demonstrate Defendant's Policy had a disparate impact on a 'protected group' or any other employee, but for her conclusory statement that 'Defendant's Drug-free Workplace Policy has a disparate impact on qualified persons with disabilities and is therefore facially invalid[.]' . . . This is simply insufficient to sustain such a claim."); *see also Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 355–56 (E.D. Pa. 2015) ("It does not constitute a prima facie case of disparate impact discrimination under the ADA. Hanrahan's complaints fall well short of the *Twombly* and *Iqbal* pleading standard and must accordingly be dismissed.").

### c.  Failure to Accommodate

Finally, Penn State argues that Frazier's request to remain in the Program and receive a Practicum extension was a fundamental alteration and therefore unreasonable.  "However, whether a requested modification would work a fundamental alteration requires a fact intensive inquiry."[121]  "[I]t is usually inappropriate to resolve the issue on a motion to dismiss."[122]  So Penn State's motion to dismiss is denied as to Frazier's failure-to-accommodate claim.[123]

## III.  CONCLUSION

Penn State's motion to dismiss pursuant to Rule 12(b)(6) is denied as to Frazier's disparate-treatment and failure-to-accommodate claims in Counts I and II.  But it is granted with prejudice as to Frazier's disparate-impact claims in Counts I and II.  It is also granted with prejudice as to Count III.

Leave to amend is not granted.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[124]  A complaint is "futile" if even as amended, it would fail to state a claim upon which relief could be granted.[125]  Amendment would be futile here because Frazier has already amended his Complaint twice.

---

[121] *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 458 (E.D. Pa. 2014).
[122] *Id.*
[123] *Id.* ("Therefore, I have no basis to evaluate whether the professor's failure to accommodate was reasonable. I will deny Muhlenberg's motion to dismiss Mr. Hershman's ADA claims.").
[124] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).
[125] *Id.*

As such, Penn State will be given twenty-one days from today's date to file an Answer to the surviving claims in Frazier's Second Amended Complaint.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge